IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:13-CV-465-D

| | |
|---|---|
| IVAN PITTMAN, ) | |
| ) | |
| Plaintiff/Claimant, ) | |
| ) | |
| ) | **MEMORANDUM AND** |
| v. ) | **RECOMMENDATION** |
| ) | |
| CAROLYN W. COLVIN, Acting ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

This matter is before the court on the parties' cross motions for judgment on the pleadings [DE-24, DE-31] pursuant to Fed. R. Civ. P. 12(c). Claimant Ivan Pittman ("Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3) seeking judicial review of the denial of his applications for a period of disability and Disability Insurance Benefits ("DIB"). The time for filing responsive briefs has expired and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, the undersigned recommends denying Claimant's Motion for Judgment on the Pleadings, allowing Defendant's Motion for Judgment on the Pleadings, and upholding the final decision of the Commissioner.

## I. STATEMENT OF THE CASE

Claimant protectively filed an application for a period of disability and DIB on January 21, 2010, alleging disability beginning May 19, 2009. (R. 26, 177-80). His claim was denied initially and upon reconsideration. (R. 26, 80-97, 98-117). A hearing before Administrative Law Judge Edward Bowling ("the ALJ") was held on November 29, 2011, at which Claimant was represented

by counsel and a vocational expert ("VE") appeared and testified. (R. 44-79). On March 2, 2012, the ALJ issued a decision denying Claimant's request for benefits. (R. 23-43). On May 1, 2013, the Appeals Council denied Claimant's request for review. (R. 1-6). Claimant then filed a complaint in this court seeking review of the now final administrative decision.

## II. STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996), *superseded by regulation on other grounds*, 20 C.F.R. § 416.927(d)(2)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

## III. DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. § 404.1520 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. § 404.1520a(b)-(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. *Id.* § 404.1520a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* § 404.1520a(e)(3).

In this case, Claimant alleges the following errors by the ALJ: (1) failure to discuss the opinion of Dr. Nancy Henderson-Hines, one of Claimant's treating physicians, Pl.'s Mem. Supp. Pl.'s Mot. J. Pleadings ("Pl.'s Mem.") [DE-25] at 10-11; and (2) improper evaluation of the opinion of Dr. John P. Mann, another of Claimant's treating physicians, *Id.* at 11-14.

3

## IV. FACTUAL HISTORY

### A.  ALJ's Findings

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act.  At step one, the ALJ found that Claimant was no longer engaged in substantial gainful employment but that he had engaged in substantial gainful activity between May 19, 2009 and October 31, 2009.  (R. 28).  Next, the ALJ determined that Claimant had the following severe impairments: carpal tunnel syndrome, more to the right; obstructive sleep apnea; degenerative joint disease of the knees bilaterally; degenerative disc disease of the lumbar and thoracic spine; minimal obstructive lung disease; mild obesity; hypertension; bipolar disorder; and depression and anxiety.  (R. 28-29).  The ALJ also determined that Claimant suffered from the following non-severe impairments: headaches; gout attacks; and neck and back pain.  (R. 29).  At step three, the ALJ concluded these impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (R. 29-30).  Applying the technique prescribed by the regulations, the ALJ found that Claimant's mental impairments have resulted in mild restrictions in his activities of daily living, moderate difficulties in social functioning and concentration, persistence and pace, with no episodes of decompensation of an extended duration.  (R. 29).

Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding Claimant had the ability to perform light work[1] with the following additional limitations:

---

[1] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If an individual can perform light work, he or she can also perform sedentary work, unless there are additional limiting factors such as the loss of fine dexterity or the inability to sit for long periods of time. 20 C.F.R.

4

standing/walking/sitting 6 hours; frequent, but not constant, upper extremity for gross and fine manipulation; avoid concentrated exposure to fumes, dusts, and gases and hazards; he is limited to simple, routine, repetitive tasks, in that he can apply common sense understanding to carry out oral and diagrammatic instructions; and he should have no more than occasional contact with the public and co-workers.

(R. 30). In making this assessment, the ALJ found Claimant's statements about his limitations not fully credible. (R. 30-36). At step four, the ALJ concluded Claimant did not have the RFC to perform the requirements of his past relevant work as a carpet cleaner and carpet installer. (R. 36). Nonetheless, at step five, upon considering Claimant's age, education, work experience and RFC, the ALJ determined Claimant is capable of adjusting to the demands of other employment opportunities that exist in significant numbers in the national economy. (R. 36-37).

## B.   Claimant's Testimony at the Administrative Hearing

At the time of Claimant's administrative hearing, Claimant was 41 years old and unemployed. (R. 36, 52-53). Claimant attained an 8th grade education and completed some special education classes; he is unable to read or write. (R. 54-55). Claimant maintained employment as a carpet installation subcontractor through October 2009. (R. 53-54, 199-201). Though Claimant did not continue to perform any physical work after May 2009, he continued to exercise decision-making power until November of that year. (R. 53). Without his help with the physical labor, Claimant's wife and son were unable to perform the work necessary to continue the business, and in November 2009, their subcontracting business was terminated. (R. 53-54). Claimant also worked as a self-employed carpet cleaner. (R. 56, 213).

Claimant explained numerous medical conditions which support his disability claim and his inability to work full-time. These medical conditions include depression and anxiety (R. 58-63),

---

§ 404.1567(b).

sleep apnea (R. 61-62), short-term memory loss (R. 63-64), carpal tunnel syndrome (R. 64-66), chronic obstructive pulmonary disease ("COPD") (R. 64), neck and back pain (R. 67-68), knee pain (R. 68-69), and gout attacks (R. 71).

Claimant testified that his inability to work has caused him severe depression and anxiety. (R. 58-63). Claimant's depression was so severe that he attempted to kill himself by overdosing on Valium and planned to shoot himself in the head, but law enforcement intervened before he could complete the act. (R. 58-59). Claimant's relationships with his live-in children have deteriorated because his conditions cause him to be irritable and angry with them, resulting in heated arguments. (R. 59, 61). Since January 2010, Claimant has seldom left his bedroom, and he occasionally accompanies his wife on a shopping trip or to drink coffee at a neighbor's house. (R. 59-60). Claimant does not feel comfortable in crowds of people or in situations requiring interaction with the public. (R. 61). Claimant struggles to get out of bed in the morning, to take care of personal hygiene, and experiences extremely low energy levels because of his depression. (R. 60, 63). Claimant has taken a number of medications to help treat his conditions, but these medications cause him to sleep up to 16 hours each day. (R. 62-63).

Claimant testified that since experiencing a head injury, he has experienced significant short-term memory loss and confusion. (R. 63-64). Claimant explained that he routinely forgets about a task, such as cooking, while in the middle of performing it or misplaces household items while using them. *Id.* As a result, Claimant depends heavily on his wife for help with cooking and other household needs. (R. 64).

Claimant explained limitations resulting from COPD. (R. 64). Claimant is an ex-smoker who quit immediately upon being diagnosed with COPD. *Id.* Claimant estimates that he has 60

6

percent of his breathing capacity. *Id.* At night, he routinely gasps for air and needs help from his wife to catch his breath. *Id.* During the day, conditions such as heat and humidity will exacerbate his breathing problems. *Id.* Claimant also described problems with sleep apnea. (R. 61-62). Claimant testified that he was prescribed a BiPAP machine, which he continues to use through the present. (R. 62). Utilizing the BiPAP machine along with other medications for his mental impairments, Claimant is able to sleep through the night. *Id.*

Claimant described troubles with carpal tunnel, primarily exhibited in his right wrist, though problems exist in both arms. (R. 64-66). Claimant testified that his grip strength is significantly reduced as a result of the condition. (R. 65). For example, Claimant noted that activities such as taking a lid off of a jar or holding onto an item such as a can of soda are extremely difficult to impossible for him. (R. 65-66). Claimant estimates that he is unable to lift more than 20 pounds comfortably as a result of the carpal tunnel in his wrists. (R. 66). Claimant had some electrical shock treatment and wears braces and splints to help alleviate the problem, but has not yet undergone surgery. (R. 66).

Claimant finally testified that he experiences neck and back pain, knee pain, and gout attacks. (R. 67-69, 71). Claimant describes his neck and back pain as a full ten (10) out of ten (10) on a pain scale. (R. 67). He uses Fentanyl patches on his neck to help alleviate this pain, which seems to help temporarily. (R. 67-68). Any lifting or walking for extended periods of time, such as during a shopping trip requiring walking further than 50 to 100 yards, exacerbates his pain to the point where he must sit down. *Id.* Claimant estimates that he can sit for up to one (1) to two (2) hours at a time without experiencing pain in his neck and back. (R. 68). He also described knee pain dating back to an injury suffered while playing high school football and made worse by years of kicking carpet

7

as a part of his job. (R. 68-69). Walking, turning sideways, and putting weight on his right knee is painful. (R. 69). Claimant attends therapy for the knee and that the treatment has helped. *Id.* Claimant can still drive an automatic car occasionally. (R. 52). Claimant's gout attacks occur about twice a year and primarily affect his feet and ankles. (R. 71).

## C.    Vocational Expert's Testimony at the Administrative Hearing

Theodore H. Sawyer testified as a VE at the administrative hearing. (R. 73-77). After the VE's testimony regarding Claimant's past work experience (R. 73), the ALJ asked the VE to assume a hypothetical individual of the same age, education and prior work experience as Claimant and posed three (3) hypothetical questions. First, the ALJ asked whether the individual could perform Claimant's past relevant work as a carpet layer (DOT # 865.381-010) or carpet cleaner (DOT # 369.384-014) assuming the individual has the physical capacity to:

> [lift] 50 pounds occasionally, 20 pounds frequently, can sit, stand, and/or walk about six hours out of an eight hour day. This individual would be limited to frequent, not constant, use of the upper extremities for fine and gross manipulation as a result of carpal tunnel. This individual would have to . . . avoid constant exposure to dust, odor, gas, and fumes, would have to avoid constant exposure to hazards such as unprotected machinery and heights. This individual would be limited to simple, routine, and repetitive tasks as a result of medication side effects, mental impairments, and/or pain [to the extent that they could] apply common sense to carry out oral and diagrammatic instructions. This individual should have only occasional contact with the public, [and] occasional contact with coworkers.

(R. 73-74). The VE responded that the hypothetical individual would not be able to perform Claimant's past relevant work. (R. 74). The ALJ then asked whether there were any jobs available in the local and national economies to an individual with the limitations described. *Id.* The VE responded that work would be available to an individual with these limitations and gave the following examples: production helper (DOT # 691.687-010); laundry laborer (DOT # 361.687-018);

8

and general laborer, textiles (DOT # 589.687-026). (R. 74-75). The ALJ then asked whether the same individual could find work assuming that the individual was limited to work at the light exertion level with the other limitations remaining the same. (R. 75). The VE responded, when limited only to jobs available at the light level, that work would be available to an individual with the limitations and gave the following examples: conveyor feeder (DOT # 529.685-046); x-ray inspector (DOT # 529.685-274); and sorter, agricultural produce (DOT # 529.687-186). (R. 75-76). Third, the ALJ asked the VE to assess whether the same individual could find work assuming the following added limitations: incapable of lifting any weight; could sit or stand up to one or two hours if the work situation allowed for periodic breaks or rests. (R. 76). The VE responded that such an individual could not maintain competitive employment at any exertional level. *Id.*

## V. DISCUSSION

### A.   The ALJ's Failure to Discuss Dr. Henderson-Hines' Medical Opinion.

Claimant contends first that the ALJ erred in failing to discuss the medical opinion prepared by Dr. Henderson-Hines, one of Claimant's treating physicians. Pl.'s Mem. at 10-11; (R. 416). The undersigned finds the failure to consider this opinion to be harmless error.

Regardless of the source, the ALJ must evaluate every medical opinion received. 20 C.F.R. § 404.1527(c). In general, the ALJ should give more weight to the opinion of an examining medical source than to the opinion of a non-examining source. *Id.* § 404.1527(c)(1). Additionally, more weight is generally given to opinions of treating sources, who usually are most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability, than non-treating sources, such as consultative examiners. *Id.* § 404.1527(c)(2). Though the opinion of a treating physician is generally entitled to "great weight," the ALJ is not required to give it "controlling weight." *Craig,*

9

76 F.3d at 590 (quotations & citations omitted). In fact, "if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Id.*; *see also Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992) (stating "[t]he ALJ may choose to give less weight to the testimony of a treating physician if there is persuasive contrary evidence"); *Mastro*, 270 F.3d at 178 (explaining "the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence") (citation omitted).

If the ALJ determines that a treating physician's opinion should not be considered controlling, the ALJ must then analyze and weigh all of the medical opinions in the record, taking into account the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist.[2] *Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005) (citing 20 C.F.R. § 404.1527). While an ALJ is under no obligation to accept any medical opinion, *see Wireman v. Barnhart*, No. 2:05-CV-46, 2006 WL 2565245, at *8 (W.D. Va. Sept. 5, 2006), he must nevertheless explain the weight accorded such opinions. *See* SSR 96-2p, 1996 WL 374188, at *5 (July 2, 1996); SSR 96-6p, 1996 WL 374180, at *1 (July 2, 1996). An ALJ may not reject medical evidence for the wrong reason or no reason. *Wireman*, 2006 WL 2565245, at *8. "In most cases, the ALJ's failure to consider a physician's opinion (particularly a treating physician) or to discuss the weight given to that opinion will require remand." *Love-Moore v. Colvin*, No. 7:12-CV-104-D, 2013 WL

---

[2] The Social Security regulations provide that all medical opinions, including opinions of examining and non-examining sources, will be evaluated considering these same factors. 20 C.F.R. § 404.1527(e).

10

5350870, at *2 (E.D.N.C. Sept. 24, 2013) (citing *Hill v. Astrue*, 698 F.3d 1153, 1159-60 (9th Cir. 2012); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 747, 750 (6th Cir. 2007); *Hines v. Barnhart*, 453 F.3d 559, 563 (4th Cir. 2006)). However, "[i]n some cases, the failure of an ALJ to explicitly state the weight given to a medical opinion constitutes harmless error, so long as the weight given to the opinion is discernible from the decision and any grounds for discounting it are reasonably articulated." *Bryant v. Colvin*, No. 5:11-CV-648-D, 2013 WL 3455736, at *5 (E.D.N.C. July 9, 2013) (citations and quotations omitted).

Dr. Henderson-Hines treated Claimant at least as early as May 2008 and saw him for problems such as joint, chest, and back pain; degenerative disc disease; high blood pressure and dizziness; and depression. *See* (R. 416-27) (clinic notes from Claimant's visits with Dr. Henderson-Hines). The opinion which Claimant contends was ignored by the ALJ appears within the notes from a hospital follow-up visit with Dr. Henderson-Hines dated January 22, 2010:

> Disability process: He gave me a list of things and he thinks he is disabled and would need to be seen by Social Security for the process. I agree that he has some injuries and some problems. He has a long-standing history of doing work that causes damage to his hands and knees. I really do not think that he can do a job that requires the use of his hands and knees that he has done in the past. He cannot do the carpet that he has done in the past because he has just worn his body out. We will have him go through the disability process.

(R. 416). The ALJ's failure to consider this opinion is harmless where the limitations outlined in the opinion do not conflict with the RFC determined by the ALJ.

Dr. Henderson-Hines' statement that Claimant has "some injuries and some problems" (R. 416) is in accord with the findings of the ALJ. At step two, the ALJ determined that Claimant suffered from the severe impairments of degenerative joint disease in both knees and carpal tunnel syndrome, primarily experienced in the right wrist, along with other severe and non-severe

11

impairments. (R. 28-29). Dr. Henderson-Hines' statement about Claimant's employment history and inability to perform his past work is consistent with VE testimony concerning Claimant's past relevant work and with the ALJ's finding that Claimant is unable to perform that work. (R. 36, 73-74). The remaining statements by Dr. Henderson-Hines merely recount that Claimant planned to apply for Social Security disability benefits and are irrelevant to the disability determination. (R. 416). Therefore, the limitations offered in Dr. Henderson-Hines' opinion do not conflict with the ALJ's decision, making the ALJ's error in failing to consider the opinion harmless. *See Love-Moore*, 2013 WL 5350870, at *2 (concluding the ALJ's failure to consider a physician's opinion was harmless error where physician's opinion was consistent with the ALJ's RFC determination). This also distinguishes the present case from others where remand was ordered for failure to consider a treating physician's opinion. *Cf. Dew ex rel K.W. v. Colvin*, No. 4:12-CV-129-D, 2013 WL 4523617, at *6 (E.D.N.C. Aug. 27, 2013) (adopting magistrate judge's recommendation to remand case where the ALJ failed to consider treating medical opinion that contradicted ALJ's determination); *Bryant*, 2013 WL 3455736, at *6-7 (adopting magistrate judge's recommendation to remand case for failure to properly evaluate treating opinions where the opinions were not consistent with the ALJ's disability determination).

Moreover, Dr. Henderson-Hines expressed an opinion on an issue reserved to the Commissioner. *See* 20 C.F.R. § 404.1527(d) (reserving opinions on the issues of a claimant's disability and ability to work for the Commissioner). Specifically, the opinion states Dr. Henderson-Hines' belief that Claimant could not return to his past relevant work and that he could not perform work involving the use of his hands and knees as with his past work. (R. 416). These are opinions regarding the Claimant's ability to work, which although not entitled to any "heightened evidentiary

12

value," *Morgan v. Barnhart*, 142 F. App'x 716, 722 (4th Cir. 2005), may not be summarily dismissed on that basis, and the ALJ is generally required to "determine the extent to which the [treating physician's legal conclusion] is supported by the record," *id.* (citing SSR 96-5p, 1996 WL 374183, at *3 (July 2, 1996)). While the ALJ did not evaluate the statements to determine the extent to which they were supported by the record, such error is harmless because there is no reason to believe that remanding to compel consideration of them would lead to a different outcome. *See Love-Moore*, 2013 WL 5350870, at *2 (concluding the ALJ's failure to consider a physician's opinion was harmless error where consideration of the opinion would not have altered the ALJ's conclusion that claimant is not disabled) (citing *Morgan*, 142 F. App'x at 723). As discussed above, the limitations outlined in the opinion do not conflict with the RFC determined by the ALJ. Thus, since the statements made in Dr. Henderson-Hines' opinion concern issues reserved for the Commissioner and do not conflict with the ALJ's findings, the undersigned finds the ALJ's failure to consider the opinion to be harmless error.

**B.      Weight Attributed to Dr. Mann's Opinion.**

Claimant's second assignment of error is that the ALJ failed to assign more weight to the opinion of Dr. Mann, another of Claimant's treating physicians. Pl.'s Mem. at 11-14. The undersigned disagrees with Claimant and finds that the ALJ's assignment of "no weight" to Dr. Mann's opinion is supported by substantial evidence. (R. 33).

Dr. Mann expressed the medical opinions at issue in two form questionnaires–a Physical Capacities Evaluation and a Clinical Assessment of Pain–completed on August 16, 2011. (R. 531-34). Dr. Mann noted a number of extreme functional limitations: Claimant could stand for only one (1) to two (2) hours; sit for only one (1) to two (2) hours; could not lift any weight; experienced

13

severe breathing difficulty and chest pain; is incapacitated by the pain and is unlikely to improve; and that treatments for his pain have failed to reduce symptoms and are unlikely to do so in the future. *Id.* The ALJ attributed "no weight" to the opinion and found that the objective medical findings and Dr. Mann's treatment notes conflicted with the findings:

> Dr. Mann's opinion is clearly based on the claimant's subjective complaints and not on any subjective findings. As noted above, the claimant's MRI scans of the brain have been found to be relatively normal (despite his claims of dizziness), he has no more than mild degenerative changes in his lumbar spine and no degenerative changes in the cervical spine, his [COPD] is only "mild" according to an x-ray and pulmonary function testing and his lungs have been "relatively clear" according to Dr. Mann's own treatment notes, his blood pressure is well controlled with medications, and his sleep apnea is controlled as well. There is absolutely nothing in the evidence to support the severe functional limitations set out by Dr. Mann.

(R. 33). The ALJ also extensively reviewed Dr. Mann's treatment notes. The ALJ noted that Dr. Mann found Claimant's lungs to be "relatively clear" at a series of clinic visits (R. 32, 674-76), that Claimant had no further complaints related to sleep apnea after he began using the BiPAP machine (R. 32, 660-61, 664, 669), and that Claimant's high blood pressure was well-controlled by medication (R. 33, 660). Claimant challenges the ALJ's assessment of three of his ailments: the degenerative changes and resulting pain in Claimant's lumbar spine, carpal tunnel syndrome, and COPD and related breathing difficulties. Pl.'s Mem. at 11-14.

### i. *Lumbar Spine Evidence*

The ALJ's finding that Claimant has suffered no more than mild degenerative changes in his lumbar spine is supported by substantial evidence. (R. 33). The ALJ specifically noted an MRI exam performed on June 25, 2010, which noted central disc protrusion at the L5-S1 level "resulting in a minimal central and bilateral neural foraminal canal stenosis" and that "mild symmetric neural foraminal compromise is demonstrated at [the L5-S1] level." (R. 32, 496). Claimant, citing the

14

same MRI examination, essentially argues that the reviewing court should look at the same evidence considered by the ALJ–the MRI report and Claimant's subjective testimony regarding back pain–and come to a different conclusion about the weight attributable to Dr. Mann's report. Pl.'s Mem. at 12. That argument is problematic for two reasons. First, reviewing courts are not permitted to re-weigh the evidence considered by the ALJ in order to come to a different conclusion, provided that the ALJ's findings are supported by substantial evidence. *Mastro*, 270 F.3d at 176 (citing *Craig*, 76 F.3d at 589). Here, the ALJ's determination that Claimant suffered only "mild" degenerative changes in his lumbar spine accompanied by only a "minimal" degree of canal stenosis constitutes substantial evidence that the more restrictive limitations described in Dr. Mann's opinion were unwarranted.

Further, to the extent Claimant contends that his subjective complaints of pain must be accepted by the ALJ upon finding that he suffered from a condition that could cause the pain he alleges, Claimant misstates the proper legal standard. Rather, upon determining that a claimant suffers from a condition that *could* cause the pain that Claimant alleges, the ALJ must then assess that claimant's credibility by reference to the medical record and all other available evidence to determine whether the claimant is as functionally limited as he or she claims. *See Craig*, 76 F.3d at 595; *see also* 20 C.F.R. § 404.1529(c)(3); SSR 96-7p, 1996 WL 374186, at *3. Here, despite finding that Claimant's degenerative disc disease in his lumbar spine was a severe impairment, the ALJ found that Claimant's statements of pain were not fully credible because the evidence of record did not support the finding that Claimant was as functionally limited as he alleged. (R. 28, 31-36). Claimant does not contend this finding is not supported by substantial evidence and the undersigned finds no error. Thus, the ALJ was not obligated to accept that testimony or to weigh it any more

15

heavily than he did even though the MRI exam demonstrated and the ALJ found that Claimant suffered from a condition that could cause the alleged pain. Claimant's testimony, therefore, is not evidence that warrants assignment of greater weight to Dr. Mann's opinion.

### ii. *Carpal Tunnel Syndrome*

Second, Claimant challenges the ALJ's findings regarding his carpal tunnel syndrome in assessing Dr. Mann's opinion. Pl.'s Mem. at 12-13. The ALJ gave two principal reasons for finding that Claimant's carpal tunnel syndrome did not limit him to the extent he claimed: (1) that Claimant continued to work until November 2009 despite the condition; and (2) that Claimant has not received significant treatment for the problem. (R. 33). The ALJ assessed carpal tunnel as part of the RFC and credibility analyses, and not, as Claimant contends, as grounds for discounting Dr. Mann's opinion. *Id.* Nevertheless, the undersigned will evaluate the extent to which the evidence regarding Claimant's carpal tunnel syndrome supports the ALJ's findings related to the opinion.

First, the ALJ's findings with regard to Claimant's continued work despite suffering from carpal tunnel syndrome are supported by substantial evidence. The ALJ acknowledged that Claimant suffered from carpal tunnel as early as June 2008 and determined that it was a severe impairment at step two. (R. 28, 33, 754-55). Nevertheless, Claimant continued to work until November 2009 and testified that major reason he stopped working was not pain in his forearms, but rather because of a head injury. *See* (R. 53) ("Q: Why [did] you stop work on that date? A: I got a head injury."). Claimant also testified that he felt that he could lift 20 pounds comfortably. (R. 66). Thus, substantial evidence supported the ALJ's finding that Claimant continued to work despite suffering from carpal tunnel syndrome and that the limitations Dr. Mann described were not supported by the record.

16

Next, the ALJ's finding that Claimant failed to seek treatment for the ailment is also supported by substantial evidence. Claimant complained of forearm pain and stiffness beginning in May 2008 and was diagnosed with carpal tunnel syndrome in June 2008. (R. 423, 425, 754-55). After his diagnosis, Claimant was prescribed carpal tunnel splints, but Claimant chose not to wear them because they bothered him. (R. 66, 755). Claimant stated that he has not undergone surgery to correct the problem. (R. 66). Claimant argues that the ALJ's analysis ignores the fact that his condition worsened over time. Pl.'s Mem. at 13. The ALJ did acknowledge Claimant's testimony regarding his struggles to grip items or to open containers (R. 31), but simply found that Claimant's failure to seek treatment rendered those statements less credible (R. 33).

Claimant also contends that Dr. Mann's findings regarding his inability to lift any weight were supported further by the opinions prepared by Dr. Henderson-Hines and Dr. Serano.[3] Pl.'s Mem. at 13; (R. 416, 766). Dr. Henderson-Hines' opinion merely states that Claimant suffered from "some injuries and some problems," and that Claimant would not likely be able to return to his past relevant work because it involved using his hands and knees. (R. 416). The opinion does not indicate that Claimant is completely unable to lift any weight. *Id.* Further, Dr. Serano's opinion does not support the finding that Claimant was affected to the degree found by Dr. Mann. Dr. Serano opined that Claimant could lift up to five (5) pounds on an occasional basis while Dr. Mann stated that Claimant could perform no lifting of any weight. (R. 531-34; 766). Dr. Serano's opinion also fails to mention carpal tunnel syndrome in its diagnosis, which appears to indicate that the lifting

---

[3] Dr. Serano's opinion was not evaluated by the ALJ because it was prepared more than two months after the ALJ issued his decision. (R. 766). Claimant submitted the opinion to the Appeals Council, which concluded that the opinion did not provide a basis for overturning the ALJ's decision. (R. 1-4). Claimant has raised no issues on appeal related to Dr. Serano's opinion.

17

limitations found by Dr. Serano were not attributable to carpal tunnel. (R. 766).

### iii.   *COPD/Shortness of Breath*

Claimant's final challenge to the assessment of Dr. Mann's opinion concerns the ALJ's findings that Claimant's COPD was mild and that Claimant consistently exhibited relatively clear lungs upon examination. Pl.'s Mem. at 13-14. Dr. Mann described Claimant as exhibiting "severe [shortness of breath]" and chest pain caused by COPD at all exertional levels. (R. 532). Claimant's July 2010 pulmonary function study found only a "minimal obstructive lung defect" and a September 2010 x-ray found that Claimant's COPD was mild. (R. 32, 575, 688). Dr. Mann consistently noted that Claimant's lungs were "relatively clear" during clinic visits between July 2010 and July 2011. (R. 32-33, 660-61, 664-66, 670-71, 674-76, 684-85). The ALJ's findings that conflict with Dr. Mann's assessment and related functional limitations, therefore, are supported by substantial evidence.

Claimant argues that the ALJ failed to mention all evidence supporting Dr. Mann's limitations, specifically references to significant dyspnea and a moderate decrease in diffusing capacity. Pl.'s Mem. at 13. First, the ALJ is not required to recite his consideration of each piece of evidence in the record. *See Piney Mountain Coal Co. v. Mays*, 176 F.3d 753, 762, n.10 (4th Cir. 1999) ("If a reviewing court can discern 'what the ALJ did and why he did it,' the duty of explanation is satisfied") (quoting *Lane Hollow Coal Co. v. Dir., Office of Workers' Comp. Programs*, 137 F.3d 799, 803 (4th Cir. 1998)); *Brewer v. Astrue*, No. 7:07-CV-24-FL, 2008 WL 4682185, at *3 (E.D.N.C. Oct. 21, 2008) ("[T]he ALJ is not required to comment in the decision on every piece of evidence in the record and the ALJ's failure to discuss a specific piece of evidence is not an indication that the evidence was not considered.") (citing *Green v. Shalala*, 51 F.3d 96, 101

18

(7th Cir. 1995)). Rather, the ALJ's thorough consideration of the medical evidence of record indicates that he considered all evidence of record. *See Best v. Astrue*, No. 5:06-CV-301-D, 2008 WL 64687, at *8 (E.D.N.C. Jan. 3, 2008) (finding no error where "[After noting] that he considered the entire record prior to making his determination. . .[the ALJ], in five single-spaced typed pages, . . . summarized the majority of Claimant's medical records as well as Claimant's testimony.").

Second, Claimant does not show how the evidence cited demonstrates severe shortness of breath at all exertional levels. Certainly, the ALJ acknowledged that Claimant suffered from some shortness of breath: the RFC evaluation limited Claimant to work at the light exertional level and the ALJ explicitly added the restriction minimizing Claimant's exposure to fumes and gases because of the COPD evidence and medical opinions. (R. 32-33). It appears that many of the exhibits demonstrating dyspnea cited by Claimant relate to obstructive sleep apnea, meaning that symptoms were primarily exhibited at night when Claimant was sleeping. (R. 669, 674-76). Claimant also cites the radiology reports accompanying the finding that Claimant suffered from "mild COPD" without explanation of how those charts support Dr. Mann's findings of severe breathing limitations outside of the fact that they demonstrate that Claimant suffered from some dyspnea. (R. 575-85). Claimant noted that he was determined to have suffered a "moderate decrease in diffusing capacity" as a result of COPD. (R. 688). Yet, Claimant fails to explain how a moderate decrease in lung capacity (which accompanied the finding that he suffered only from a "minimal" obstructive defect) supports the severe limitations noted by Dr. Mann, and Dr. Mann's opinion similarly offers no explanation. (R. 531-34). Claimant cites various other hospital and clinical records showing that he suffered from some shortness of breath but again does not show how the records demonstrate severe shortness of breath at any exertional level. (R. 285-316, 671). While these records

19

demonstrate that Claimant suffered from some shortness of breath, as acknowledged and incorporated into the RFC assessment by the ALJ (R. 30-36), they fail to establish the ALJ's conclusion that Dr. Mann's opinion overstated Claimant's limitations was not supported by substantial evidence. Accordingly, the ALJ did not err in the consideration of Dr. Mann's opinions.

## VI. CONCLUSION

For the reasons stated above, it is RECOMMENDED that Claimant's Motion for Judgment on the Pleadings [DE-24] be DENIED, Defendant's Motion for Judgment on the Pleadings [DE-31] be ALLOWED, and the final decision of the Commissioner be UPHELD.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have ten (10) days upon receipt to file written objections, response to which (if any) must be made within seven (7) days upon receipt of the written objections. Failure to file timely written objections shall bar an aggrieved party from receiving a de novo review by the District Court on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions not objected to, and accepted by, the District Court.

Submitted, this the 26th day of August 2014.

Robert B. Jones, Jr.
United States Magistrate Judge

20

Case 5:13-cv-00465-D   Document 34   Filed 08/26/14   Page 20 of 20